UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

Appeal No. 20-2029

---

**JANE DOE**
Plaintiff-Appellant

v.

**CITY OF DETROIT**
Defendant-Appellee

---

# PETITION FOR REHEARING *EN BANC*

---

On Appeal from the United States District Court
for the Eastern District of Michigan
Southern Division
No. 2:18-cv-11295
Honorable Mark A. Goldsmith

---

STERLING ATTORNEYS AT LAW, P.C.
Attorneys for Plaintiff-Appellant
Carol A. Laughbaum (P41711)
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

STATEMENT OF COUNSEL .............................................................................. 1

INTRODUCTION ................................................................................................. 2

ARGUMENT ......................................................................................................... 4

    A.    Hostile Work Environment Claim: The Panel Credited the City with Taking Action that is Not in the Record, and Created an Intra- and Inter-Circuit Conflict Regarding the Timeliness and Adequacy of its Investigation of Plaintiff's Harassment Claims ................................................................................ 4

        1.    The Panel adopted facts in an employer-favorable light ...... 4

        2.    The Panel's decision conflicts with the law of this Circuit ................................................................................... 7

        3.    The Panel's decision conflicts with the law of other circuits ................................................................................ 11

    B.    Retaliation Claim: The Panel Created an Intra-Circuit Conflict with Longstanding Precedent Regarding Title VII Retaliation Claims ............................................................................. 12

CONCLUSION .................................................................................................... 14

# TABLE OF AUTHORITIES

**Case Law**

*Burlington N & Santa Fe Ry Co v White*, 548 US 53; 126 S Ct 2405;
   165 L Ed 2 345 (2006) .................................................................. 12, 14

*Davis v Tri-State Mack Distributors*, 981 F2d 340 (8th Cir 1992) ..................... 1, 11

*EEOC v Avery Dennison Corp*, 104 F3d 858 (6th Cir 1997) ................................ 13

*Gorzynski v Jetblue Airways Corp,* 596 F3d 93 (2d Cir 2010) ........................... 1, 11

*Harrison v Metropolitan Gov't of Nashville*, 80 F3d 1107 (6th Cir 1996) ............... 13

*Imwalle v Reliance Medical Prods, Inc*, 515 F3d 531 (6th Cir 2008) ..................... 12

*Jackson v Quanex Corp*, 191 F3d 647 (6th Cir 1999) ............................................ 8

*Rogers v Henry Ford Health System*, 897 F3d 763 (6th Cir 2018) ......................... 12

*Seeger v Cincinnati Bell Tel Co*, 681 F3d 274 (6th Cir 2012) ........................... 13, 14

*Smith v Rock-Tenn Services, Inc*, 813 F3d 298 (6th Cir 2016) ........................... 8, 9

*Waldo v Consumers Energy Co*, 726 F3d 802 (6th Cir 2013) ............................... 10

*Wyatt v Nissan North America*, 999 F3d 400 (6th Cir May 28, 2021)
   ................................................................................. 1-3, 8, 10, 13, 14

## STATEMENT OF COUNSEL

The full Court should rehear this matter *en banc* because the case presents questions of exceptional importance. The panel decision conflicts with decisions of this Court, including *Wyatt v Nissan North America*, 999 F3d 400 (6th Cir May 28, 2021). Rehearing *en banc* is necessary to secure and maintain uniformity of this Court's decisions. The panel decision also conflicts with decisions of other courts of appeals, including *Davis v Tri-State Mack Distributors*, 981 F2d 340 (8th Cir 1992) and *Gorzynski v Jetblue Airways Corp,* 596 F3d 93 (2nd Cir 2010). In particular, rehearing *en banc* is warranted because the panel decision created intra-and/or inter-circuit conflicts with respect to the following issues:

1.      Whether an employer's *de minimis* investigation of certain incidents of severe harassment directed at an employee (here, a transgender employee) and its failure to investigate *at all* subsequent incidents of escalating harassment including death threats directed at that employee, satisfies the employer's duty to take action reasonably calculated to stop the harassment entitling it to summary judgment.

2.      Whether either: (a) a three month period of time between an employee's protected activity and being denied a promotion, coupled with other evidence of retaliation; or (b) a supervisor angrily stating to a subordinate employee that the employee "threw [the supervisor] under the bus" in filing a written harassment complaint, followed by a sequence of negative actions taken

1

by that supervisor against the employee; are insufficient to establish a causal connection for purpose of the employee's retaliation claim, such that the employer is entitled to summary judgment.

## INTRODUCTION

On May 28, 2021, a panel of this Court decided *Wyatt v Nissan North America*, 999 F3d 400 (6th Cir 2021) in which it reversed a grant of summary judgment to an employer on the plaintiff-employee's hostile work environment and retaliation claims. With respect to the hostile work environment claim, the *Wyatt* panel agreed that where a three-week delay exists in an employer taking any investigative steps regarding sexual harassment complaints, the question of whether the employer responded reasonably should be resolved by a jury. In this case, the delay in investigating was far longer. Plaintiff Doe's employer, the City of Detroit, failed to meaningfully investigate or take action to stop the vile and escalating harassment directed at her because she is transgender, and undertook no investigation regarding repeated death threats made against her. It was only months after the death threats, and after Doe had gone to the media about her plight and the City's indifference, that the Detroit Police Department attempted an investigation of sorts, while admitting to Doe that her complaints had "slipped through the cracks" and that given the time that had passed, there was little they could do to catch her "anonymous" harasser. Yet, a panel of this Court found as a matter of law that the City's response was adequate.

2

And, in deciding that there was also not even a question of fact as to whether a causal connection existed between Doe's undisputed protected activity and the retaliation directed at her by her supervisor, the panel simply ignored startling, compelling evidence of the supervisor's furor with Doe for having filed a complaint ("you threw me under the bus"), after which the supervisor took a myriad of harassing actions against Doe, of the sort that would have dissuaded a reasonable worker from making discrimination complaints, which is the definition of actionable retaliation pursuant to Supreme Court and Sixth Circuit precedent, including *Wyatt*.

The lower court, and a panel of this Court, not only viewed the evidence in a light most favorable to the City rather than Doe, contrary to basic summary judgment standards, they credited the City with having taken action that is nowhere in the record, and created arguments on behalf of the City which are belied by the record.

In addition to contorting the evidentiary record, the panel made multiple serious legal errors that conflict with earlier decisions of this Court and of other circuit courts. Rehearing *en banc* is warranted to restore consistency in the law governing claims for hostile work environment and retaliation claims in the Sixth Circuit.

Plaintiff respectfully seeks an *en banc* review of the panel's erroneous decision.

# ARGUMENT

A. **Hostile Work Environment Claim: The Panel Credited the City with Taking Action that is Not in the Record, and Created an Intra- and Inter-Circuit Conflict Regarding the Timeliness and Adequacy of its Investigation of Plaintiff's Harassment Claims**

1. **The Panel adopted facts in an employer-favorable light**

The panel accepted or created facts regarding the City's response to the harassment at issue which find no support in the record. With respect to the early incidents of harassment directed at Doe because of her transitioning and/or transgender status (in particular, the 12/14/16 defaced name-plate and 12/16/16 sex toy/disturbing note) the panel found that the City of Detroit "interviewed employees in an attempt to identify the harasser, but no employees admitted to any involvement" and "told employees that the city had a zero-tolerance harassment policy that could result in termination" (Slip Op p 3; see also p 9). There is no evidentiary support in the record for these alleged "facts." At every opportunity, Doe pointed this out to the district court, and to the panel of this Court (ECF 39, Pl's Response to SJ, p 3 [PageID 2056], para 33-35, corresponding to those factual claims in the City's SJ Motion, p 5 [PageID 1117]; ECF 49, Pl's M for Recon, pp 10-11 [PageID 2522-2523]; Doc 21, PL's Brief on Appeal, pp 47-48 (Brief pp 37-38)). At the district court level and

continuing, the City relied exclusively n Doe's testimony as to *what she had been told* had been done (Pl. Brief on Appeal, Doc 21 pp 47-48).[1]

The panel also claimed that the "city collected handwriting samples and initiated an investigation that included employee interviews" (Slip Op 9). While the City did collect handwriting samples, nothing was done with them (an HR rep, with no training or expertise in handwriting analysis, perused them, and nothing more) (Pl's Brief on Appeal, Doc 21, p 17). With respect to the purported investigation, the City produced no investigative file, and no notes or other records of any interviews. A peer of Doe's in the Grants Department, Assistant Director Ms. Parker, testified that there was a staff meeting called around the time of these incidents, and Doe was mentioned, but that the discussion was vague and cursory, and nothing specific or substantive was relayed (Pl's Brief on Appeal, Doc 21, pp 6-7).

While the panel asserts that the City interviewed Charles Allen after the gift bag incident, but he denied any involvement (Slip Op, 4) there is no paperwork documenting any such interview, and Allen himself was equivocal about whether or not anyone directly asked him if he was responsible (Allen Dep, ECF NO. 40-12, PageID 2239-2240). There is no further evidence of any

---

[1] The district court decided the summary judgment motion on the briefs, with no oral argument.

even arguable attempt to identify Doe's harasser, which a jury could easily find paved the way for her harasser to continue undeterred.[2]

With respect to the death threats that occurred five months later, in May 2017, the panel appears to place blame on Doe for the City's unresponsiveness, in that Doe did not initially point the finger at Mr. Allen, as though it was her duty to figure out the identity of her harasser, rather than the City's (Slip Op, 11)("However, Doe did not tell the City that she believed Allen was responsible for the harassment…[until] May 22, 2017").

The panel then formulated an argument on the City's behalf as to why it insisted that Doe, after receiving the first death threat, had to come back to the office before her safety concerns had been addressed. The panel opined that perhaps Doe's job was not capable of being performed remotely, and thus it was reasonable to require Doe to return to the office (between the first and second death threats) (Slip Op, 11). The City never made that claim, with good reason. The City at that time (even pre-Covid) provided staff in Doe's department with remote access/ability to work from home due to safety issues (e.g., frigid weather) according to Doe's peer (ECF 40-19, Parker Dep, PageID 2395). Doe's situation was significantly more dire and threatening than inclement weather, yet she was denied that option.

---

[2] The panel also strangely credits the City with the fact that Doe's assistant cleaned off Doe's vandalized nameplate, as though this showed the City took action to stop the harassment (Slip Op, 8).

6

The panel also made reference to an alleged investigation *after the* second (May 22, 2017) death threat. Again there is no record of anything of the sort, at least not until months later, prompted by Doe's televised interview with an investigative reporter, where she detailed the vile harassment and the City's inaction. While the panel credits Ms. Kent (HR) with contacting the police after the May 22, 2017, death threat, as though that showed the City was taking action, the panel completely missed the bigger picture – that went nowhere. In fact, the DPD advised Kent that it was an internal (HR) matter, and *not* a criminal matter, punting the harassing death threats back to HR to handle. But, HR did nothing to investigate, even knowing that the police were not taking any action. Instead, as Doe testified, it was like the City was "keeping it a secret" (Pl Brief on Appeal, Doc 21, Page: 23-24). This was a complete failure to assist or protect Doe.

Finally, the panel appears to credit the City for the fact that there were no further vile messages or death threats after May 22, 2017. A jury could easily conclude, however, that this had nothing to do with the City's actions, and was instead a direct result of Doe taking her story to the media, detailing the harassment, and the City's failure and refusal to address it.

### 2. The Panel's decision conflicts with the law of this Circuit

The panel's affirmation of summary judgment to the employer on the issue of whether the City's response to the harassment was adequate is at odds

7

with longstanding Sixth Circuit precedent including, but not limited to, *Jackson v Quanex Corp*, 191 Fed 647, 665 (6th Cir 1999) ("[I]f a remedy is ineffectual, liability will attach … an employer's actions will not necessarily shield it from liability if harassment continues," reversing summary judgment for employer on hostile work environment claim, given the employer's pattern of unresponsiveness to the plaintiff's complaints); *Smith v Rock-Tenn Services, Inc*, 813 F3d 298 (6th Cir 2016) and the recent *Wyatt* decision.

In *Smith v Rock Tenn,* this Court stressed that what an employer fails to do to address workplace harassment it is made aware of is a critical inquiry; taking *some* action is not dispositive.

> Defendant argues that the steps it took were so clearly prompt and appropriate as to entitle it to judgment as a matter of law. Yet **Defendant fails to grasp that what it failed to do is just as important.** In *West,* 374 Fed. Appx. 624, in which we affirmed the denial of a defendant's renewed motion for judgment as a matter of law, **we identified a number of steps that a reasonable jury might have thought the defendant should have taken, but did not**. In this case, a reasonable jury could have concluded that Defendant's total inaction for ten days …was unreasonable. Defendant did not separate the two men, suspend Leonard pending an investigation, or initiate its investigation in a timely manner; a reasonable jury could find that the failure to take any of these steps or others rendered its response neither prompt nor appropriate in light of what it knew or should have known regarding Leonard's prior misconduct.

*Id,* 813 F3d at 312.

The panel in this case distinguished *Rock-Tenn*, where this Court agreed that a reasonable jury could conclude that the employer's "total inaction for ten

days" after the plaintiff was assaulted was unreasonable, on the basis that in *Rock-Tenn*, the identity of the perpetrator was known, but in Doe's case the identity of the perpetrator was unknown. Leaving aside the considerable evidence that Doe's perpetrator *was* known, and focusing only on the death threats, the City took no action for 14 days after the first death threat, and instead swept it under the rug, after which her harasser was emboldened to make a second death threat. And, to be clear, neither threat was investigated at all, until the police became involved after Doe's story aired. The police apologized for dropping the ball, and did an investigation of sorts months later, which they conceded was too little, too late. And, the police sergeant involved admitted that had the police been involved earlier, it may have prevented the harassment from escalating (Pl's Brief on Appeal, Doc 21, Page: 27)(citing Bolden dep, RE 40-13, PageID 2267, 2272-2274).³

The panel also, curiously, attempted to distinguish *Smith v Rock-Tenn* on the basis that "the employer in *Smith* took no action at all for a significant period of time. We have routinely held that an employer acts unreasonably when it takes no steps to address complaints of harassment" (Slip Op, 10) (citations omitted). But that is precisely the point – the City of Detroit also took no action

---

³ The panel credits the City with submitting a work order on or about May 15, 2017 to put a lock on Doe's office door, with no discussion as to why such a simple act was not instituted for half a year, despite Doe's ongoing requests.

9

at all for a significant period of time, and thus acted unreasonably. From December 2016 to May 2017 (and beyond), the City did virtually nothing to identify or try to catch Doe's harasser, despite Doe's ongoing pleas for a lock on her door and camera to surveil her work area.

Nor was it a matter of Doe's "dissatisfaction" with the type of action taken (Slip Op, 10); there was virtually no action taken. With respect to the May incidents, no one was questioned, and the incidents were swept under the rug until Doe (pseudonymously, and with her appearance obscured) gave an interview to a local television station.

*Wyatt v Nissan North America, supra*, was decided two weeks before the oral argument in this case, and was cited by Doe's counsel at the hearing. But the panel all but ignored it, and made no effort to distinguish it (Slip Op, 11).

Doe submits that *Wyatt* is controlling and dispositive. If a three-week delay in investigating harassment involving unwanted physical contact warrants denial of summary judgment to the employer, *id,* then a several month delay in investigating death threats (and that is assuming the police investigation qualifies) does as well. In both cases, it is for a jury to determine the reasonableness, or lack thereof, of the employer's response.

In *Waldo v Consumers Energy Co.*, 726 F3d 802, 814 (6th Cir 2013), this Court reiterated that with respect to co-worker harassment, a plaintiff must show that the employer's response to her complaints "manifests indifference or

unreasonableness in light of the facts the employer knew or should have known." In short, the reasonableness of the employer's actions is fact specific. This case involves facts on a different level than those involving inappropriate sexual or racial comments directed at an employer by a co-worker; they are far more serious, and deserving of particularly prompt action reasonably calculated to stop it.

### 3. The Panel's decision conflicts with the law of other circuits

The panel's refusal to allow a jury to determine the reasonableness of the City's action and/or inaction to the harassment and death threats directed at Doe is also at odds with the law of other circuits in cases with facts similar to those presented here. See *Davis v Tri-State Mack Distributors*, 981 F2d 340, 342-344 (8th Cir 1992) (agreeing employer failed to take prompt remedial action to address sexual harassment where the plaintiff complained several times over a six month period about continuing harassment, and despite employer making some "token efforts" to address the problem by meeting with employees to discuss sexual harassment and formulating an anti-harassment policy, with court agreeing the "company failed to appreciate the extent of the harassment and failed to take proper remedial measures"); *Gorzynski v Jetblue Airways Corp*, 596 F3d 93, 103 (2d Cir 2010) (where only some, but not all, of the reported incidents of harassment were met with prompt remedial action, a question of

11

fact exists as to whether defendants met their burden and compels against summary judgment on the basis of that defense).

**B.     Retaliation Claim: The Panel Created an Intra-Circuit Conflict with Longstanding Precedent Regarding Title VII Retaliation Claims**

The panel also committed serious error in affirming summary judgment to the City on Doe's retaliation claim, finding as a matter of law that there was no causal connection between Doe's (ongoing) protected activity and: 1) being denied a promotion; and 2) the retaliatory harassment she alleges.

First, the panel essentially ignored Hughley's "you threw me under the bus" comment to Doe regarding Doe's protected activity (harassment complaint), which Hughley followed up with a series of negative actions likely to dissuade a reasonable person from making or supporting a charge of discrimination, which is the current test for actionable retaliation under Title VII. *Burlington N & Santa Fe Ry Co v White*, 548 US 53, 68 (2006); *Rogers v Henry Ford Health System*, 897 F3d 763, 775-776 (6th Cir 2018), citing *Burlington.*

Second, the panel did not properly view the timeline, and longstanding precedent that a short time period (two to three months) between the protected activity and negative treatment is alone sufficient to establish the requisite causal connection; and if more than that amount of time elapses, then temporal proximity *plus* other evidence will satisfy the minimal burden of establishing causation sufficient to survive summary judgment. *Imwalle v Reliance Medical*

12

*Prods, Inc*, 515 F3d 531 (6th Cir 2008); *Harrison v Metropolitan Govt of Nashville*, 80 F3d 1107, 1199 (6th Cir 1996) (15-month period of time between protected activity and termination, with evidence that the plaintiff's activities were scrutinized more closely than those of comparably situated employees and that defendants took every opportunity to make the plaintiff's life as an employee unpleasant is evidence supporting a finding of retaliation).

Third, the panel ignored longstanding Sixth Circuit precedent that the burden on a plaintiff to establish a prima facie case of retaliation is "minimal." *Wyatt*, citing *EEOC v Avery Dennison Corp*, 104 F3d 858, 861 (6th Cir 1997).

With respect to Doe's non-promotion, the temporal proximity is compelling. Doe engaged in continuing protected activity, including airing her discrimination complaints, and the City's inaction, very publicly in July 2017. Three months later, in October, she was denied the promotion she sought. As this Court recently reiterated in *Wyatt*, that is sufficient temporal proximity to establish causation. *Id*, 999 F3d at ___, citing *Seeger v Cincinnati Bell Tel Co*, 681 F3d 274, 283-284 (6th Cir 2012) (collecting cases holding that "a two -to-three-month time lapse between a plaintiff's protected activity and occurrence of a materially adverse action is sufficient temporal proximity to satisfy a plaintiff's prima facie case of retaliation. And, here there is temporal proximity plus more. The panel mentioned, but then discounted, the evidence that Doe's supervisor

13

(Ms. Hughley) specifically linked the specter of Doe's potential non-promotion to Doe's prior discrimination/harassment complaints (Slip Op, 6).

And, with respect to Doe's retaliatory harassment claim, the harassment began within a day of Doe reporting Hughley's "you threw me under the bus" comment to HR, with Hughley suddenly denying Doe's vacation request, which Hughley had just approved in writing (Pl's Brief on Appeal, Doc 21, Page: 55). And, it only continued from there (nit-picking Doe's performance; overly scrutinizing Doe's leave time; placing Doe on an attendance plan; and almost daily taking issue with Doe over matters that had never before been an issue, *Id.*

This claim, too, should have easily survived summary judgment. *Wyatt, Seeger, Burlington.*

## CONCLUSION

The Court should grant the petition for rehearing *en banc*.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By: /s/Carol A. Laughbaum
　　Carol A. Laughbaum (P41711)
　　Attorney for Plaintiff-Appellant
　　33 Bloomfield Hills Pkwy., Ste. 250
　　Bloomfield Hills, MI 48304
　　(248) 644-1500

**PROOF OF SERVICE**

I certify that on July 7, 2021, I filed the foregoing paper with the Clerk of the Court using the ECF system which will electronically send notification to all counsel of record.

/s/Carol A. Laughbaum
Sterling Attorneys at Law, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
claughbaum@sterlingattorneys.com

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of FRAP 35(b)(2)(A) because this brief contains 3,360 words, excluding the parts of the brief exempted by FRAP 32(f).

2. This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2016 in 14-point Calisto MT font.

        Respectfully submitted,

        STERLING ATTORNEYS AT LAW, P. C.

        By:  /s/Carol A. Laughbaum
            Carol A. Laughbaum (P41711)
            Attorney for Plaintiff-Appellant
            33 Bloomfield Hills Pkwy., Ste. 250
            Bloomfield Hills, MI 48304
            (248) 644-1500

Dated:  July 7, 2021